COURT OF APPEALS
DECISION
DATED AND FILED

March 12, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP919**

STATE OF WISCONSIN

Cir. Ct. No.  2022CV42

IN COURT OF APPEALS
DISTRICT III

---

LIFE NAVIGATORS, INC.,

   PETITIONER-RESPONDENT,

 V.

MARGARET BACH,

   RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Oconto County: JAY N. CONLEY, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1　PER CURIAM.　Margaret Bach, pro se, appeals from an injunction issued against her pursuant to WIS. STAT. § 813.123 (2021-22),[1] prohibiting her from interfering with the delivery of protective services to her adult son, Aaron, and from contacting Aaron without the consent of his guardian, Life Navigators, Inc.[2]　Bach contends that: (1) the statutory requirements for the injunction were not met; (2) she was denied due process during the injunction hearing; (3) the circuit court was biased against her throughout the proceedings in this case; and (4) Aaron's interests were not adequately represented at the hearing, and he is being deprived of his rights.　For the reasons that follow, we affirm the court's order.

## BACKGROUND

¶2　Aaron is a disabled adult who was adjudicated incompetent in Milwaukee County case No. 2006GN501 (hereinafter, "the Milwaukee case").　In 2007, Aaron was protectively placed in Bach's home pursuant to WIS. STAT. ch. 55, and Bach was appointed his guardian pursuant to WIS. STAT. ch. 54.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Due to Bach's repeated filing of meritless appeals, this court issued a filing ban against Bach that prohibits her from "commencing proceedings in this court and the circuit court … arising from, relating to, or involving Aaron's custody, care or treatment until the costs, fees, and reasonable attorney's fees" from a previous case are paid in full.　*See **Bach v. St. Vincent Hosp.***, No. 2015AP1221, unpublished slip op. ¶18 (WI App Nov. 29, 2016).　At the time Bach filed this appeal, she had not satisfied the payment of fees requirement, and we dismissed Bach's appeal.　Upon Bach's motion for reconsideration, we determined that her appeal falls outside the scope of the ban because the present matter was commenced against her, rather than by her, and we reinstated the appeal.

As relevant here, an "unpublished opinion may not be cited in any court of this state as precedent or authority, except to support … the law of the case." WIS. STAT. RULE 809.23(3)(a). Any citation to a previous case involving Bach or Aaron is solely for the law of the case.

*See Aaron B. v. County of Milwaukee*, No. 2011AP2287-FT, unpublished slip op. ¶3 (WI App May 16, 2012); *Bach v. St. Vincent Hosp.*, No. 2015AP1221, unpublished slip op. ¶3 (WI App Nov. 29, 2016). In 2009, Bach was removed as Aaron's guardian upon a circuit court's finding that she had not acted in his best interest. *Bach*, No. 2015AP1221, ¶3. Afterward, Life Navigators was appointed by the court as Aaron's guardian, and he currently resides at a group home in Oconto operated by REM Wisconsin II, Inc.

¶3      In 2015, the Milwaukee County Circuit Court issued a restraining order against Bach. The order prohibited Bach from "[v]isiting, contacting, following, or positioning herself within sight of or within 500 feet of [Aaron] without Life Navigators' prior written consent" and from "[e]ntering or remaining on the premises" of Aaron's group home in Oconto "without prior written consent of both Life Navigators and REM."

¶4      The Milwaukee County Circuit Court later issued another order granting Life Navigators' motion for contempt against Bach, finding that "Life Navigators is well within its discretion as Aaron's court-appointed legal guardian to impose restrictions on [Bach's] telephone contacts and visits with Aaron as it deems necessary." The court approved phone and visitation guidelines requiring Life Navigators' preapproval for, and supervision of, all visitation between Bach and Aaron. The guidelines also provided staff "the right to terminate any visit at any time" if Bach initiated conversation with Aaron about one of several enumerated topics, including "court issues" and Aaron returning to Bach's home. (Emphasis omitted.)

¶5      In March 2022, Life Navigators filed a petition for a temporary restraining order and injunction for an individual at risk against Bach in Oconto

County Circuit Court pursuant to WIS. STAT. § 813.123. Life Navigators alleged that Bach interfered with the delivery of protective services and placement to Aaron by making unannounced visits to the group home, each time "enflam[ing] Aaron's temperament by making false claims about his care." According to Life Navigators, each visit required intervention by the Oconto County Sheriff's Department after Bach refused to leave the group home.

¶6      Following an evidentiary hearing, the circuit court granted a four-year injunction.[3] The court found that Aaron is an individual at risk and that "[t]here is reasonable cause to believe … Bach's repeated conduct … has interfered with the delivery of protective services to Aaron." *See* WIS. STAT. § 813.123(5)(a)3.b. Bach now appeals.

## DISCUSSION

### I. Sufficiency of the evidence

¶7      Bach first argues that there was insufficient evidence before the circuit court to grant the injunction for an individual at risk pursuant to WIS. STAT. § 813.123. As is pertinent here, to grant a § 813.123 injunction, a court must find "reasonable cause to believe" that "the respondent has interfered with the delivery of protective services to or a protective placement of the individual at risk under [WIS. STAT.] ch. 55." Sec. 813.123(5)(a)3.b.

---

[3] The injunction does not completely prohibit Bach from visiting or contacting Aaron for four years. Rather, the circuit court ordered that Bach could visit and contact Aaron with Life Navigators' prior written consent.

¶8     Whether a circuit court properly granted a WIS. STAT. § 813.123 injunction presents a mixed question of law and fact. *See Welytok v. Ziolkowski*, 2008 WI App 67, ¶23, 312 Wis. 2d 435, 752 N.W.2d 359.  We will not set aside a court's factual findings unless they are clearly erroneous.  *See id.*  However, we independently review whether the legal standard for an injunction has been met. *See id.*  If a petitioner satisfies the requirements for an injunction, a court has discretion "whether or not to finally grant" the injunction, "and our review ultimately is limited to whether that discretion was properly exercised."  *See id.*

### A.    Aaron is an individual at risk.

¶9     An "individual at risk" means "an adult at risk," WIS. STAT. § 813.123(1)(ep), which, in turn, is defined as "any adult who has a physical or mental condition that substantially impairs his or her ability to care for his or her needs and who has experienced, is currently experiencing, or is at risk of experiencing abuse, neglect, self-neglect, or financial exploitation," § 813.123(1)(ae); WIS. STAT. § 55.01(1e).

¶10    We conclude that there was sufficient evidence in the record for the circuit court to find that Aaron is an individual at risk.[4]  In particular, the court

---

[4] In its "memorandum decision," the circuit court stated that Bach's repeated violations of the Milwaukee County Circuit Court's restraining order resulted in "emotional abuse" to Aaron.  However, in the court's written injunction order, the court did not specify why Aaron was an individual at risk.  It is therefore unclear whether the court meant its "emotional abuse" statement to constitute a finding of Aaron being an individual at risk or whether the court was making a finding under WIS. STAT. § 813.123(5)(a)3.c. ("[T]he respondent has engaged in or threatened to engage in the abuse, financial exploitation, neglect, harassment, or stalking of an individual at risk ….").  We need not determine whether Aaron was emotionally abused because the record clearly establishes that he is at risk of experiencing abuse, neglect, self-neglect, or financial exploitation.  *See State v. Holt*, 128 Wis. 2d 110, 124-25, 382 N.W.2d 679 (Ct. App. 1985), *superseded by statute on other grounds*, WIS. STAT. § 940.225(7) (concluding that this court may affirm a circuit court's decision on other grounds).  Therefore, we do not address the parties' arguments regarding emotional abuse.

took judicial notice of the record in the Milwaukee case, which evidenced that Aaron has a "degenerative brain disorder and developmental disabilities" that resulted in a guardianship and protective placement and services. *See Aaron B.*, No. 2011AP2287-FT, ¶3. Moreover, during the injunction hearing, REM staff testified that Aaron's brain tumor requires him to have around-the-clock care from trained staff. This care includes staff ensuring that Aaron attends his medical appointments, maintains his hygiene, and has a healthy diet. Thus, Aaron's brain tumor substantially impairs his ability to care for himself and has left him at risk of abuse, neglect, self-neglect, and financial exploitation.

¶11 We also note that Aaron is still subject to a protective placement order, and, therefore, there has been a prior judicial determination that he has a "primary need for residential care and custody."[5] *See* WIS. STAT. § 55.18 (requiring an annual review of protective placement orders). Thus, Aaron has a primary need to have his daily needs provided for due to a disability, which is a finding substantially similar to a finding that he has a "physical or mental condition that substantially impairs his … ability to care for his … needs." *See* WIS. STAT. § 55.01(1e). In the protective placement order, Aaron was also found to require someone to exercise control and supervision over him in a residential setting for the purpose of protecting him from abuse, financial exploitation, neglect, and self-neglect. Again, this standard is substantially similar

---

[5] The definition of an "adult at risk" is nearly identical to the "primary need for residential care and custody" standard for a protective placement. *See* WIS. STAT. § 55.08(1)(a). That is, for a protective placement, the individual "must have a primary need (1) to have his or her daily needs provided for in a residential setting; and (2) to have someone else exercising control and supervision in that residential setting for the purpose of protecting the person from abuse, financial exploitation, neglect, and self-neglect." *Jackson Cnty. Dep't of Health & Hum. Servs. v. Susan H.*, 2010 WI App 82, ¶16, 326 Wis. 2d 246, 785 N.W.2d 677. In addition, the individual must have a disability that is permanent or likely to be permanent. Sec. 55.08(1)(d).

to a finding that Aaron "is at risk of experiencing abuse, neglect, self-neglect, or financial exploitation." *See id.* Aaron's Milwaukee case for protective placement is still ongoing, and based upon the findings and orders in that case, we conclude that Life Navigators established that he is an individual at risk.

B. Bach "interfered with the delivery of protective services to" Aaron.

¶12 The record also supports the circuit court's finding that there is "reasonable cause to believe" that Bach "interfered with the delivery of protective services to" Aaron. *See* WIS. STAT. § 813.123(5)(a)3.b. Specifically, the court determined that Bach made five unauthorized visits to the group home and, on one occasion, attempted to intimidate staff "by letting her three dogs loose." The court found that Aaron "regressed significantly" following Bach's unauthorized visits and contacts and that he is "far less cooperative with his caregivers, often refusing to follow their instructions and occasionally becoming verbally aggressive." In short, the court determined that Bach's actions "made it more difficult for [staff] to provide Aaron the best care."

¶13 The circuit court's findings regarding Bach's interference are based on an abundance of evidence. Evidence submitted to the court demonstrated that Bach repeatedly and intentionally violated the Milwaukee County Circuit Court's restraining order. For example, Meghan Snell, a program coordinator with REM who worked at the home with Aaron, averred that in December 2021, Bach was not allowed in-person visits because of her "prior failures to abide by the guidelines" established pursuant to the Milwaukee case for phone contact and visitation. Snell and another staff member testified that they were trained to call the Oconto County Sheriff's Department if Bach visited the group home without prior approval.

¶14   On December 9, 2021, Bach sent an email to an employee of Life Navigators stating that Bach would visit Aaron without prior approval unless she could visit him on Christmas Day.  Consistent with Bach's December 9 email, on December 21, 2021, she arrived at the group home without prior approval from Life Navigators.  Bach managed to speak to Aaron that day despite staff calling the Oconto County Sheriff's Department.

¶15   Roughly one week later, Bach spoke to Aaron over the phone about "the [Milwaukee] case and the possibility of Aaron returning to live with" her.  Bach again visited the group home without prior approval on three occasions in early to mid-February 2022.  On these occasions, the Oconto County Sheriff's Department was called, and on at least two occasions, its deputies instructed Bach to leave the premises.  During the last of these three visits, Aaron told Bach that he did not want her to visit the group home and told her to "follow the rules."

¶16   On February 23, 2022, Bach again visited the group home unannounced and was accompanied by her three dogs.  According to Justin Derocher, the staff member who was working that day, Bach "attempted to intimidate [Derocher] by calling her three dogs" to the group home's porch.  The Oconto County Sheriff's Department eventually arrived, and Bach was arrested for violating the restraining order.

¶17   Evidence presented to the circuit court demonstrated that Aaron regressed significantly after each of Bach's unauthorized contacts with him.  Snell testified at the injunction hearing that Aaron would become "withdrawn" immediately after Bach's contacts and that the contacts were "detrimental to his mental and physical health."  Specifically, she testified that Aaron would get "more behavioral and more agitated" and become "obsess[ed]" with "going to

court." Snell averred that Aaron's focus on court led him "to be aggressive, distrustful, combative, and uncooperative because [Bach's] comments make him believe that he is not safe in the [group home] and that his providers are not taking good care of him." According to Snell, Aaron would lose the "life skills" that they taught him and refused to work with staff on his treatments after Bach's visits. Similarly, Derocher testified that Aaron became very agitated after Bach's arrest on February 23, 2022, and struck him in the face.

¶18 Staff also testified that Bach's visits have made it difficult to provide care to Aaron. For example, Snell testified that because of Aaron's behavior following Bach's contacts, some staff have refused to work with Aaron, resulting in staff shortages. She also averred that Aaron's behavior following the visits caused staff "extreme distress."

¶19 Bach takes issue with a number of the circuit court's findings, but ultimately she ignores our standard of review.[6] For example, she cites to a "transcript of phone calls [she] had with [Aaron]" that, according to Bach, "prove she never violated any of the illegal guidelines [Life Navigators] imposed." Furthermore, she argues that she did not use the three dogs on February 23, 2022, to "intimidate" staff. According to Bach, the dogs are her service dogs, and the staff "loved" them when she previously brought them to the group home. Bach

---

[6] At the injunction hearing, Bach accused a REM staff member during cross-examination of sexually assaulting Aaron. The circuit court disregarded the accusation, finding that "[a]ny alleged sexual assault should be reported to authorities if [Bach] wishes to do that." Throughout her appellate briefing in this case, Bach has renewed the accusation and asks this court to "order an investigation" into the assault. This court does not have the authority to order law enforcement to investigate matters.

also contends that Aaron became agitated during her February 23 visit because he witnessed a staff member "assault" her.

¶20 Bach also asserts that none of the staff members who testified or submitted signed affidavits can be believed.[7] For example, Bach states that Snell "cannot be believed because she claimed she had no financial incentive [to testify for Life Navigators], when she admitted working 60 hours a week caring for Aaron. If Aaron comes home to live, as he wishes, she would not be paid for 60 hours a week to do nothing." Next, Bach asserts that "n[o] witness provided any evidence of which workers left the group home due to [her] visits, or any documentation of increased difficulty getting new workers."

¶21 Notwithstanding Bach's arguments to the contrary, we will not second-guess the circuit court's factual findings when they are not clearly erroneous. Here, evidence was presented during the hearing that supported each of the court's challenged findings. *See Welytok*, 312 Wis. 2d 435, ¶27 ("Where … more than one reasonable inference can be drawn from the credible evidence, we accept the reasonable inference drawn by the circuit court sitting as fact finder."). For example, even if Bach did not violate the phone guidelines established pursuant to the Milwaukee case, the uncontradicted evidence showed that she visited the group home on numerous occasions and spoke to Aaron without prior approval. The court's findings of fact regarding the repeated

---

[7] Bach also asserts that Life Navigators should be judicially estopped from arguing that Aaron regressed due to her visits. Bach failed to raise this argument in the circuit court or in her brief-in-chief and, therefore, she forfeited the issue. *See State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612 ("[S]ome rights are forfeited when they are not claimed at trial; a mere failure to object constitutes a forfeiture of the right on appellate review."); *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) (court of appeals generally does not address arguments raised for the first time in a reply brief).

violations of the restraining order are not clearly erroneous. Also, the "circuit court is the ultimate arbiter of the witnesses' credibility." *Id.*, ¶28. We, therefore, will not overturn the court's order simply because Bach herself did not find Life Navigators' witnesses credible. As to her argument that no "evidence" was presented that her actions caused staff shortages at the group home, Bach fails to grasp that testimony is evidence.

¶22 Next, Bach argues that her unauthorized contacts with Aaron did not prevent REM from delivering protective services to Aaron. She argues that "[n]o witness ever mentioned how [Bach's] visits could affect their delivery of services." However, as outlined above, staff members stated that Bach's unauthorized contacts caused Aaron to regress and become aggressive. As a result of Aaron's regression and behavior, REM suffered staff shortages at the group home, and it would take time to get Aaron to comply with the services provided by staff. In addition, Bach visited the group home numerous times, in violation of the visitation guidelines, resulting in significant disruption to the daily operation of the group home. Staff members testified that they were trained to call the Oconto County Sheriff's Department whenever Bach made an unauthorized visit to the group home. These facts were sufficient for the circuit court to issue the injunction, finding "reasonable cause to believe" that Bach "interfered with the delivery of protective services." *See* WIS. STAT. § 813.123(5)(a)3.b.

¶23 Bach also takes issue with the circuit court's determination that her unauthorized contacts with Aaron resulted in his regression and behavioral issues. She argues that "[s]everal doctors have noted Aaron's rare brain tumor causes these behaviors and seizures, not interactions with his mother." Although Snell testified that Aaron had previous behavioral issues, she clarified that Bach's contacts with Aaron intensified the issues and caused Aaron to regress. Therefore,

the court could reasonably find that Bach's actions interfered with Aaron's treatment and progress. *See Welytok*, 312 Wis. 2d 435, ¶¶27-28.

¶24 In all, the circuit court's findings surrounding Bach's behavior, Aaron's regression following the visits, and the resulting strain on the staff's ability to provide care are not clearly erroneous. Based on those findings, Life Navigators met its legal burden under WIS. STAT. § 813.123(5)(a)3.b., and the court did not erroneously exercise its discretion in granting the injunction. *See Welytok*, 312 Wis. 2d 435, ¶24 ("We may not overturn a discretionary determination that is demonstrably made and based upon the facts of record and the appropriate and applicable law.").

## II. Due process

¶25 Bach next contends that she was denied due process because she was "given only 5-10 minutes to address the [circuit] court before losing her rights to free speech and freedom of association."[8] "A fundamental guarantee of due process of law is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Brown County v. Shannon R.*, 2005 WI 160, ¶64, 286 Wis. 2d 278, 706 N.W.2d 269 (footnote omitted; citation omitted). "The opportunity to be heard includes the right to 'present a complete defense.' The right to present a complete defense, in turn, includes the right to offer the testimony of witnesses." *Id.*, ¶65 (footnote omitted; citation omitted).

---

[8] To the extent Bach intends to raise an independent First Amendment constitutional challenge, we deem that argument to be undeveloped and will not consider it further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). To the extent we do not address other issues or arguments that Bach intended to raise, we conclude that such issues or arguments are not sufficiently developed, are conclusory, or are too difficult to decipher. *See id.* Accordingly, we reject them.

¶26 At the start of the injunction hearing, the circuit court stated, "I will remind everybody … we have an hour on the calendar for this. I have another hearing [in one hour], and so I intend to keep to the schedule …." After Life Navigators' last witness testified, the court stated, "Ms. Bach, you said you wanted to present evidence." Bach, in turn, chose not to present any witnesses and, instead, made arguments related to her due process rights, jurisdiction, Life Navigators' petition, Aaron's First Amendment rights, and WIS. STAT. § 813.125.

¶27 Moreover, Bach did offer into the record numerous exhibits. Over Life Navigators' objection, the circuit court stated that it would consider the exhibits in its ruling but that it did not have time to go through them at the hearing. The court ultimately determined that Bach's "copious exhibits" were "hearsay except for copies of court documents in [the Milwaukee case] which the [c]ourt took judicial notice of."

¶28 Bach was not denied due process.[9] The circuit court gave Bach ample opportunity to cross-examine all of Life Navigators' witnesses and provided her an opportunity to call her own witnesses or submit other evidence to the court. The court also reviewed Bach's exhibits and considered those that it found to be admissible. Bach does not provide any specific evidence that she would have presented at the hearing had she been given more time. In fact, it appears that she

---

[9] Bach also argues that the circuit court had "a higher burden of proof to meet" in order to "deny [her] basic constitutional rights." However, the cases Bach cites for this proposition are irrelevant to the case at hand; instead, the cases relate to Fourteenth Amendment challenges to laws and the appropriate scrutiny afforded to the validity of those laws upon judicial review. *See, e.g.*, **Fisher v. University of Texas at Austin**, 570 U.S. 297, 310 (2013) ("[S]trict scrutiny must be applied to any admissions program using racial categories or classifications."). Bach does not independently challenge the constitutionality of any applicable law in this case, and we therefore do not consider her "burden of proof" argument further.

submitted all of her intended evidence. Therefore, Bach was not denied due process at the injunction hearing.

### III. Judicial bias

¶29 Next, Bach argues that the circuit court, the Honorable Jay N. Conley presiding, "evidence[d]" bias against her because Conley previously ruled against her in two cases—Oconto County case Nos. 2015CV203 and 2021CV169. According to Bach, Judge Conley's bias against her is "self-evident" because he "refused jurisdiction" in the two cases, yet he "took jurisdiction" in this case "under the same facts." Bach also asserts that Judge Conley "reversed course on jurisdiction again when [she] filed a Motion For Enforcement of Order." Similarly, Bach states that Judge Conley "refused to allow an appeal, refused to grant [her] motion for waiver of transcript fees due to her indigency, and refused to include her evidence from the hearing initially." In the context of judicial bias, Bach again raises her claims regarding the injunction hearing's length and other issues addressed below, including the purported deprivation of Aaron's rights.

¶30 We conclude that Bach forfeited the judicial bias issue by not raising it before the circuit court. *See State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612. Even if the issue was adequately preserved, Bach's argument that Judge Conley evidenced bias is undeveloped and supported only by conclusory statements. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). She fails to identify, much less explain, what form of bias took place—i.e., subjective bias, actual bias, or serious risk of actual bias. *See Miller v. Carroll*, 2020 WI 56, ¶¶21-22, 392 Wis. 2d 49, 944 N.W.2d 542. Nor does she explain how the court's rulings in the previous two cases were incorrect or affected the court's impartiality in this case. We will not abandon our neutrality to

develop an argument on Bach's behalf.[10]  *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.

## IV.  Remaining claims regarding Aaron's rights

¶31    Lastly, Bach contends that "Aaron had no chance to defend his rights.…  His interests were not represented or protected in any way."  She adds that Aaron "did not want this restraining order" and that there "is no precedent for [the] order, filed by a guardian to limit [Aaron's] rights against his will, without any participation allowed in the hearing."  According to Bach, it "was illegal for" Life Navigators to file the petition.  She also argues that "[n]ot allowing Aaron to have daily phone calls and visits with his mother" violates Aaron's constitutional rights and that the circuit court's injunction order violates the Wisconsin Patient Bill of Rights and the Americans with Disabilities Act (ADA).

¶32    We first note that Bach does not have standing to assert any legal claims on Aaron's behalf because she is not his guardian, guardian ad litem (GAL), or adversary counsel.  *See Krier v. Vilione*, 2009 WI 45, ¶20, 317 Wis. 2d 288, 766 N.W.2d 517 ("'Standing' is a concept that restricts access to judicial remedy to those who have suffered some injury because of something that

---

[10] Regardless, Bach's judicial bias claims lack merit.  It is undisputed that the circuit court had jurisdiction over Life Navigators' petition in this case, *see Village of Trempealeau v. Mikrut*, 2004 WI 70, ¶1, 273 Wis. 2d 76, 681 N.W.2d 190, but lacked jurisdiction in Oconto County case Nos. 2015CV203 and 2021CV169 due to venue for those matters being in Milwaukee County, *see* WIS. STAT. § 801.50 (venue in civil actions or special proceedings).  In addition, this court, not the circuit court, initially refused to permit Bach to appeal, and this court granted her petition for waiver of fees.  Also, the circuit court granted Bach's motion to supplement the record, and Bach fails to explain how this decision evidenced bias.  Moreover, the court permitted Bach the opportunity at the injunction hearing to present evidence, which she chose not to do aside from her submission of the exhibits.

someone else has either done or not done." (citation omitted)). Therefore, Bach cannot challenge on Aaron's behalf any purported violations of the United States Constitution, the Wisconsin Constitution, the Wisconsin Patient Bill of Rights, or the ADA.

¶33 The circuit court did however, follow the statutory mandates in this case with respect to the appointment of a GAL for Aaron in order to protect his interests. WISCONSIN STAT. § 813.123(3)(b) provides that the court, on its own motion or the motion of any party, "shall order that a [GAL] be appointed for the individual at risk, if the petition [for a restraining order and injunction] … was filed by a person other than the individual at risk." Here, a GAL was appointed for Aaron prior to the injunction hearing, the GAL spoke with Aaron prior to the hearing, and the GAL was present for the hearing. At the hearing, the GAL examined two of Life Navigators' witnesses and provided a recommendation to the court. *See* WIS. STAT. § 54.40(3) (a GAL "shall consider, but is not bound by, the wishes of the proposed ward or ward or the positions of others as to the best interests of the proposed ward or ward"). Bach fails to explain how the GAL failed to adequately fulfill his role. Therefore, Aaron's interests were protected throughout the petition process.

¶34 Aaron's GAL also properly waived Aaron's appearance at the injunction hearing. Life Navigators asserts that WIS. STAT. § 55.10(2) governs the waiver of an individual at risk's appearance. Bach concedes in her reply brief that § 55.10(2) is the proper standard to apply to Aaron's waiver.

¶35 Pursuant to WIS. STAT. § 55.10(2), an individual sought to be protected must attend a hearing

> unless, after a personal interview, the [GAL] waives the attendance and so certifies in writing to the court the specific reasons why the individual is unable to attend. In determining whether to waive attendance by the individual, the [GAL] shall consider the ability of the individual to understand and meaningfully participate, the effect of the individual's attendance on his or her physical or psychological health in relation to the importance of the proceeding, and the individual's expressed desires.

At the injunction hearing in this case, the GAL asked that the circuit court waive Aaron's appearance, stating, "I believe his appearance would be detrimental to his best interest and it would not be a good hearing for him to be a part of." Over Bach's objection, the court waived Aaron's appearance "based on his [GAL]'s statement and [the court's] knowledge of [Aaron's] condition."

¶36 We agree with Life Navigators that the circuit court properly exercised its discretion by waiving Aaron's appearance. As was alleged in the petition, Aaron significantly regresses when he discusses matters relating to his Milwaukee case. Therefore, the court could reasonably conclude that Aaron's attendance at the hearing would negatively impact his "physical or psychological health." *See* WIS. STAT. § 55.10(2). Bach does not explain how the court violated § 55.10(2) by waiving Aaron's appearance.

¶37 Lastly, Bach fails to explain how Life Navigators' petition was "illegal," particularly where the procedure for a guardian to file such a petition is permitted under WIS. STAT. § 813.123. In all, we conclude that Bach's challenges to the circuit court's injunction order fail, and we affirm.

> *By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

17