**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 4, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP929**

STATE OF WISCONSIN

Cir. Ct. No. **2018GN122**

IN COURT OF APPEALS
DISTRICT III

IN THE MATTER OF THE GUARDIANSHIP AND
PROTECTIVE PLACEMENT OF L. C. E.:

OUTAGAMIE COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

L. C. E.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Reversed.*

¶1    STARK, P.J.[1] Lauren[2] appeals an order for her protective placement pursuant to WIS. STAT. ch. 55.[3]  Lauren argues that the Outagamie County Department of Health and Human Services failed to prove, by clear and convincing evidence, that she is so totally incapable of providing for her own care or custody as to create a substantial risk of serious harm to herself or others as required under WIS. STAT. § 55.08(1)(c).  We agree, and, accordingly, we reverse Lauren's protective placement order.

## BACKGROUND

¶2    In 2018, Lauren was found to be incompetent due to a developmental disability and was appointed a guardian of her person and a guardian of her estate, pursuant to WIS. STAT. ch. 54.[4]  During Lauren's protective placement hearing in 2021, community support specialist Kim Luke testified that as of 2018, Lauren's housing situation was "very transient," and she spent time living with friends and family before obtaining her own apartment.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than her initials.

[3] Our appellate record indicates that Lauren filed a postdisposition motion in this case and that, following a hearing, the circuit court entered an order denying her motion.  Lauren's notice of appeal states that only the order for protective placement is being appealed, and Lauren does not raise any arguments on appeal regarding the denial of her postdisposition motion. Similarly, Lauren does not raise any arguments on appeal regarding her guardianships.  We therefore address only the order for Lauren's protective placement.

[4] The guardian of Lauren's estate was granted the power to perform all duties under WIS. STAT. § 54.19 and the right to exercise the powers listed in WIS. STAT. § 54.20(3).

¶3     In early 2019, Lauren was evicted from her apartment and was thereafter involuntarily committed, on an inpatient basis, pursuant to WIS. STAT. ch. 51.  While committed, Lauren eloped from her mental health facility, moved back into the apartment from which she was evicted, and then eloped to Chicago. Luke testified that in April 2019, Lauren was returned to her mental health facility and spent time at both the mental health facility and a hospital due to her being "acutely psychotic."

¶4     In August 2019, Lauren was placed at an apartment that was managed by a mental health provider and had staff to assist Lauren with medication management, shopping, cleaning, and other various activities of daily living.  According to Luke, this housing arrangement was "contingent upon or … managed through" Lauren's WIS. STAT. ch. 51 commitment.

¶5     In 2020, Lauren's WIS. STAT. ch. 51 commitment was extended following a hearing.  In September 2021, this court reversed the order extending Lauren's commitment.  *See Outagamie County v. L.C.E.*, No. 2021AP324, unpublished slip op. (WI App Sept. 8, 2021).[5]  The County subsequently petitioned to have Lauren protectively placed pursuant to WIS. STAT. ch. 55.  At the protective placement hearing, the County called both Luke and physician Michele Andrade to testify.

---

[5] We cite our prior opinion in *Outagamie County v. L.C.E.*, No. 2021AP324, unpublished slip op. (WI App Sept. 8, 2021), not as precedential or persuasive authority but to provide relevant background information regarding Lauren's case.  *See* WIS. STAT. RULE 809.23(3)(a).  This court reversed the order extending Lauren's commitment due to the circuit court's failure to make specific factual findings as to Lauren's dangerousness.  *See L.C.E.*, No. 2021AP324, ¶9.

¶6      Luke's testimony consisted largely of the facts set forth above, s*ee supra* ¶¶2-5, and she provided information concerning Lauren's condition at the apartment. She stated that Lauren "would prefer to have no involvement with any kind of [C]ounty management" services and that Lauren would like to leave her apartment. Luke opined that money available through a protective placement to pay for goods and services would not be a motivator for Lauren to stay at her apartment because she is "spontaneous and impulsive." Luke also opined that if Lauren left the supported apartment, she would be "vulnerable to the abuse of other people," she might stop taking her medication, and her mental health symptoms might reappear." Luke further opined that Lauren might not be able to perform all of her activities of daily living without prompts from mental health workers.

¶7      Doctor Andrade testified that she examined Lauren and diagnosed her with a mild intellectual developmental disorder and an unspecified bipolar disorder. Andrade opined that Lauren's incapacity was permanent or likely to be permanent and that, due to her incapacity, Lauren was "so incapable of providing for her own care or custody as to create a substantial risk of serious harm to herself or others." Andrade further stated that Lauren did not "keep up with her personal environment" and that her apartment was "[q]uite dirty." Andrade stated that if Lauren was not protectively placed, she would be concerned "that [Lauren's] physical environment would deteriorate even worse and become an issue." Andrade also opined that absent protective placement, Lauren might not take her

medication, which would "exacerbate her safety factors." In support of this statement, Andrade mentioned that Lauren "jumped out of a two-story window."[6]

¶8 Lauren testified that she did not jump out of a two-story window, that she had been searching for apartments to live in if she were not protectively placed, that she would take her medication without the help of the County, and that her family would be willing to help her.

¶9 The circuit court found that Lauren had a primary need for residential care and custody and that she was incompetent due to her developmental disorder.[7] In making these findings, the court stated that it took notice of Lauren's WIS. STAT. ch. 51 "file" and of Dr. Andrade's report.

¶10 The circuit court further found that Lauren's incapacity "renders her so incapable of providing for her own care or custody as to create a substantial risk of serious harm to herself or others." The court based this finding on Lauren's "overall history, including things such as absconding from facilities," "jumping out of a two-story window," and Lauren's noncompliance "with her treatment plan and her medication" without daily support. The court also stated that Lauren is "not able to meet the essential requirements of her own personal health and personal safety. She's not able to manage her property and financial affairs…. She's not able to provide her own support. She's not able to prevent

---

[6] Doctor Andrade did not state when Lauren was alleged to have jumped out of a two-story window.

[7] Notably, the circuit court did not make an explicit finding that Lauren suffers from a disability that is permanent or likely to be permanent. *See* WIS. STAT. § 55.08(1)(d). However, Lauren does not contest that her disability is permanent or likely to be permanent. *See infra* ¶13 n.8.

herself from being exploited financially." The court entered an order for Lauren's protective placement, and Lauren now appeals.

## DISCUSSION

¶11    Lauren contends that the County failed to prove, by clear and convincing evidence, that she is so totally incapable of providing for her own care or custody as to create a substantial risk of serious harm to herself or others. Specifically, Lauren argues that the County presented only speculative and vague testimony about her dangerousness.

¶12    Our review of the circuit court's order to protectively place a ward presents a mixed question of fact and law. We will uphold the circuit court's factual findings unless they are clearly erroneous. *Walworth County v. Therese B.*, 2003 WI App 223, ¶21, 267 Wis. 2d 310, 671 N.W.2d 377. "A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence." *Metropolitan Assocs. v. City of Milwaukee*, 2018 WI 4, ¶62, 379 Wis. 2d 141, 905 N.W.2d 784. Whether the evidence supports the legal standard for protective placement is a question of law that we review de novo. *Therese B.*, 267 Wis. 2d 310, ¶21.

¶13    Among other requirements set forth in WIS. STAT. § 55.08(1), and as relevant to this appeal,[8] in order for the circuit court to order that Lauren be

---

[8] Lauren does not contest that she has a primary need for residential care and custody, that she is an adult who has been determined to be incompetent by a circuit court, and as noted above, that she has a disability that is permanent or likely to be permanent. *See* WIS. STAT. § 55.08(1)(a), (b), (d).

protectively placed under WIS. STAT. ch. 55, the County was required to prove by clear and convincing evidence that

> [a]s a result of developmental disability, degenerative brain disorder, serious and persistent mental illness, or other like incapacities, [Lauren] is so totally incapable of providing for … her own care or custody as to create a substantial risk of serious harm to … herself or others. Serious harm may be evidenced by overt acts or acts of omission.

*See* § 55.08(1)(c). "The risk of harm must be substantial. Mere speculation as to difficulties [a ward] may encounter is not sufficient. Specific harm must be foreseeable to fulfill this requirement. Furthermore, the foreseeable harm must be serious…. [M]inor accidents, injuries and illness are not sufficient to satisfy this requirement." *Zander v. County of Eau Claire*, 87 Wis. 2d 503, 514-15, 275 N.W.2d 143 (Ct. App. 1979). "Residential care" means "the provision of a person's daily needs in the place where the person resides." *Jackson Cnty. Dep't of Health and Hum. Servs. v. Susan H.*, 2010 WI App 82, ¶13, 326 Wis. 2d 246, 785 N.W.2d 677. "Custody" means "control and supervision in order to provide" protection "from abuse, financial exploitation, neglect, and self-neglect." *Id.*, ¶14 (quoting WIS. STAT. § 55.001).

¶14    In *Wood County v. Zebulon K.*, Nos. 2011AP2387, 2011AP2394, unpublished slip op. (WI App Feb. 7, 2013),[9] this court reversed the protective placement of two brothers because the County failed to prove that the brothers were so totally incapable of providing for their own care and custody as to create a substantial risk of serious harm to themselves. *Id.*, ¶17. There, the County

---

[9] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

presented evidence that the brothers suffered from developmental disabilities, did not understand how their disabilities affected their lives, and, because of their disabilities, were unable to "prevent financial exploitation" and were not safe from being manipulated. *Id.*, ¶¶4, 15. The County also presented evidence of concerns regarding the brothers' hygiene and "the cleanliness of their person and clothing." *Id.*, ¶15. On appeal, this court concluded that, while there were concerns about the brothers' abilities to provide for their own care, "nothing in the record establishes that they are *incapable* of providing for their own care or custody and nothing in the record establishes that their incapacities create a 'substantial risk of serious harm' to themselves or others." *Id.*, ¶16.

¶15 Like the evidence in *Zebulon K.*, Luke's testimony does not prove by clear and convincing evidence that Lauren is so incapable of providing for her own care or custody as to create a substantial risk of serious harm to herself or others. Luke opined that absent protective placement, Lauren would be "vulnerable to the abuse of other people," might stop taking her medication, and might not be able to perform all the activities of daily living. However, all of these statements are speculative and vague. Luke did not specify what kind of abuse Lauren would be "vulnerable" to; why Lauren takes the medication and what symptoms may reappear if she stops taking medication; what activities of daily living Lauren may not be able to perform on her own; how any of these factors would affect Lauren's ability to care for herself; or how any of these concerns would lead to serious harm to Lauren or others. This evidence does not rise to the level of the specific and substantial risk of serious harm required by WIS. STAT. § 55.08(1)(c). *See Zander*, 87 Wis. 2d at 514-15; *Zebulon K.*, Nos. 2011AP2387, 2011AP2394, ¶16.

8

¶16    We also note that, regardless of the outcome of Lauren's protective placement, she will continue to be subject to a guardianship of her person and a guardianship of her estate. As such, the record does not support the circuit court's finding that Lauren would be at risk of financial exploitation, or why her inability to manage her financial affairs or provide for her own support would provide a basis for her protective placement.

¶17    Similarly, Dr. Andrade's testimony does not prove by clear and convincing evidence that Lauren is so incapable of providing for her own care or custody as to create a substantial risk of serious harm to herself or others. Andrade testified that Lauren's apartment was "[q]uite dirty" and could worsen if Lauren were not protectively placed. However, this vague concern does not demonstrate that Lauren is totally incapable of providing for her own care. *See Zebulon K.*, Nos. 2011AP2387, 2011AP2394, ¶16.

¶18    Doctor Andrade did testify that Lauren's failure to take her medication may "exacerbate her safety factors," and she gave the example of Lauren jumping out of a two-story window. We also note that the circuit court found that "multiple witnesses testified about [Lauren] jumping out of a two-story window." However, Andrade was the only witness who testified that Lauren jumped out of a two-story window, and Lauren explicitly testified that she did not do so. Accordingly, there was no evidentiary basis for the court to find that multiple witnesses testified to Lauren jumping out of a two-story window. This finding was clearly erroneous.

¶19    The circuit court was certainly permitted to find Dr. Andrade's testimony more credible than Lauren's testimony. *See Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 250, 274 N.W.2d 647 (1979). Andrade, however,

9

had no firsthand knowledge of Lauren jumping out of a two-story window. Further, in our opinion reversing Lauren's involuntary commitment order—which the circuit court explicitly took judicial notice of—we noted that the statement of emergency detention and the police reports state that Lauren did not actually jump out of a two-story window. *L.C.E.*, No. 2021AP324, ¶6 n.3. The record therefore does not support either Andrade's testimony or the court's finding.

¶20 The record is devoid of any evidence of a specific and foreseeable harm that Lauren will suffer due to her disability if she is not protectively placed. *Cf. Douglas County v. J.M.*, No. 2022AP2035, unpublished slip op. ¶34 (WI App Nov. 28, 2023), *review denied* (WI Apr. 16, 2024) (concluding there was sufficient evidence that a ward's incapacity would result in substantial harm based on testimony that, due to his incapacity, the ward was unable to obtain housing by himself, unable to cook, got into physical altercations with others, and demonstrated increasingly harmful behaviors). While the County presented evidence that Lauren may not always make the best decisions, the County failed to provide sufficient evidence that Lauren presents a *substantial* risk of a *specific, foreseeable, and serious* harm to herself or others.[10]

*By the Court.*—Order reversed.

---

[10] Lauren raises two additional arguments: (1) that the circuit court impermissibly relied on hearsay evidence from Luke's and Dr. Andrade's testimony; and (2) that her trial counsel failed to provide constitutionally effective assistance of counsel. Because we conclude that there was insufficient evidence to prove that Lauren presents a substantial risk of serious harm to herself or others, we need not address these additional arguments. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (this court need not address all issues raised by the parties if one is dispositive).

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.